IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| UNDER ARMOUR, INC., | * | |
|---|---|---|
| Plaintiff, | * | |
| | * | Civil Action No. RDB-17-3223 |
| v. | * | |
| BATTLE FASHIONS, INC., *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Plaintiff Under Armour, Inc. ("Plaintiff" or "Under Armour") brings this declaratory judgment action against Defendants Battle Fashions, Inc. and Kelsey Battle (collectively, "Defendants" or "Battle") seeking a Declaratory Judgment, pursuant to 28 U.S.C. § 2201, that its use of the phrases "I Can Do All Things" and "I Can. I Will." do not infringe on Defendants' "ICAN" trademark. (Compl., ECF No. 1.)[1] On March 6, 2018, this Court denied a motion to dismiss for lack of personal jurisdiction, ruling that Under Armour had made a *prima facie* showing of personal jurisdiction over Battle. (Mem. Op., ECF No. 27.) That ruling did not resolve the jurisdictional issue as Under Armour was accorded a period of discovery to establish the existence of personal jurisdiction. However, now that discovery in this case has ended, Battle seeks a final decision on personal jurisdiction based on the evidence, and both parties requested an evidentiary hearing, which was held on July 10, 2019.

---

[1] As more fully explained *infra*, seven weeks after this action was filed, Kelsey Battle filed suit as an individual plaintiff against Under Armour in the United States District Court for the Eastern District of North Carolina. *See Battle v. Under Armour*, Case No. 5:17-cv-00627-BO (E.D.N.C.). That case was dismissed in its entirety without prejudice by Order of the United States Court of Appeals for the Fourth Circuit, implementing the first-to-file rule. *See In re Under Armour*, Case No. 18-1511, ECF No. 22) (4th Cir. May 25, 2018).

The Court finds the facts stated herein based upon its evaluation of the evidence, including the credibility of witnesses, and the inferences that the Court has found it reasonable to draw from the evidence. Kelsey Battle's minimal contacts with Maryland are insufficient to fall within the ambit of Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc., § 6-103(b). Furthermore, there is insufficient evidence to establish specific jurisdiction over Mr. Battle so as to comport with due process. Evidence produced at the hearing on July 10, 2019 established that Battle's counsel sent two letters to Under Armour in Maryland and three letters to recipients in California and New York as part of a litigation strategy to pressure Under Armour to negotiate a settlement. However, those letters were of no effect and did not result in any damage to Under Armour's business relationships. This unsuccessful attempt does not subject Kelsey Battle to personal jurisdiction in Maryland. Accordingly, for the reasons that follow, Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction or, Alternatively, Motion for Summary Judgment (ECF No. 51) shall be GRANTED IN PART and DENIED IN PART. Defendant's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure shall be GRANTED, and this case shall be transferred to the United States District Court for the Eastern District of North Carolina. With respect to the alternative motion for summary judgment, it is DENIED.[2]

---

[2] Remaining pending is Under Armour, Inc.'s Motion for Summary Judgment (ECF No. 71), which is ripe for decision.

## BACKGROUND

### I. The Parties

Under Armour is a Baltimore, Maryland corporation selling athletic clothing and footwear. (Am. Compl., ECF No. 50.) Under Armour brought this case as a declaratory judgment action seeking a declaration that it does not infringe Defendants' "ICAN" trademark and also seeks cancellation of the trademark. (*Id.*)

Battle Fashions, Inc. is a North Carolina corporation that was dissolved in August 2010. (Cert. of Dissolution, Ex. 10, ECF No. 52-2.) Kelsey Battle ("Mr. Battle") is a North Carolina resident. (Am. Compl., ECF No. 50.) Mr. Battle owns the "ICAN" trademark. Defendants counterclaim that Under Armour's "I CAN DO ALL THINGS" and "I CAN. I WILL." infringe the "ICAN" trademark. (Countercl., ECF No. 32.)

### II. Factual and Procedural History[3]

Mr. Battle owns United States Trademark Registration No. 3,081,141 ("ICAN Mark") for use on clothing, registered on April 18, 2006. (Am. Compl. ¶¶ 4, 24, ECF No. 50.) Under Armour uses the phrase "I Can Do All Things" in connection with a line of products associated with professional basketball player, Stephen Curry, who is known for writing his favorite Bible verse on his shoes ("I can do all things through Christ who strengthens me." Philippians 4:13.) (*Id.* at ¶ 12.) Under Armour also used the phrase "I Can and I Will" in connection with its products. (*Id.* at ¶ 13.)

---

[3] Also see this Court's Memorandum Opinion, ECF No. 27.

In January 2017, counsel for Battle sent a letter to Under Armour, demanding that it "[c]ease and desist use of the trademarks 'ICAN,' 'I CAN DO ALL THINGS,' and 'ICAN. I WILL' and anything confusingly similar thereto, in any way whatsoever." (*Id.* at ¶ 14.) Under Armour responded that the phrase was well-known, commonly used, confusion was unlikely, and it was aware of its obligations. (*Id.* at ¶ 15.) Negotiations were not successful, and nine months later, new counsel for Battle sent a second cease-and-desist letter on October 4, 2017. (*Id.* at ¶ 16.) Shortly after, counsel for Battle and Under Armour had a telephone conversation to discuss the October letter. (Mot. Jih Decl. ¶ 4, ECF No. 52-2 (Sealed).) Battle's counsel asked Under Armour to request that its design and marketing partners preserve documents in anticipation of a potential lawsuit. (*Id.*) Under Armour stated that it was "aware of its legal obligations" but did not commit to making any specific preservation requests. (*Id.* at ¶ 5.) Battle's counsel avers that at the end of the conversation, Under Armour was informed that Battle's counsel would send letters to Stephen Curry, his agent, and Under Armour's advertising agency requesting that they preserve documents, and there was no objection or expression of concern from Under Armour's counsel. (*Id.*) Under Armour's counsel disagrees with this representation and testified that Battle's counsel did not state that they would send letters of any kind to third parties. Having heard testimony, this Court makes the factual finding that Under Armour's counsel was not advised of any letters being sent to third parties. This Court further finds, as discussed *infra*, that this was merely a subsequent litigation strategy.

On October 13, 2017, Battle's counsel sent document preservation letters to three non-parties: (1) Wardell "Steph" Curry II in California, (2) Mr. Jeff Austin (Curry's agent) in California; and (3) Droga 5 (Under Armour's advertising agency) in New York. (*Id.* at ¶¶ 4-

4

6.) Under Armour's counsel testified that they were contacted by the recipients of the letters, causing concern that Battle was trying to pressure a settlement and would send out more letters.

In response, on November 1, 2017, Under Armour filed this declaratory judgment action (ECF No. 1), and seven weeks later, on December 20, 2017, Mr. Battle filed suit as an individual plaintiff against Under Armour in the United States District Court for the Eastern District of North Carolina, asserting trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114, 1125 and unfair competition under North Carolina state law. *See Battle v. Under Armour*, Case No. 5:17-cv-00627-BO (E.D.N.C.).[4] On January 29, 2018, Battle filed a Motion to Dismiss for lack of personal jurisdiction (ECF No. 12), and on March 6, 2018, this Court denied the motion, stating that Under Armour had made at least a *prima facie* showing of personal jurisdiction over Battle (ECF No. 27).

A scheduling order was issued and discovery commenced. (ECF No. 29.) On August 16, 2018, a First Amended Complaint was filed, followed on August 30, 2018 by the instant motion to dismiss for lack of personal jurisdiction or alternatively, for summary judgment. (ECF Nos. 50, 51.)[5] Under Armour has failed to prove, by a preponderance of the evidence, the existence of a ground for jurisdiction, so the motion shall be GRANTED IN PART, and

---

[4] Because the instant case was first-to-file, on May 25, 2018, the North Carolina case was dismissed in its entirety without prejudice by order of the United States Court of Appeals for the Fourth Circuit. *Battle v. Under Armour*, Case No. 5:17-cv-00627-BO, ECF Nos. 42-45) (E.D.N.C. May 25, 2018).

[5] Related to the motion is a Motion for Leave to File Sur-reply (ECF No. 65 (and ECF No. 66 (sealed)), which is opposed. In general, parties are not permitted to file surreplies. Local Rule 105.2(a) (D. Md. 2018). A party moving for leave to file a surreply must show a need for a surreply. *Thompson v. Naval Acad. Athletic Ass'n*, No. CIV.A. RDB-12-2676, 2013 WL 3965100, at *8 (D. Md. Aug. 1, 2013). There is no need for any additional briefing in this case, and the parties had an opportunity to make any additional arguments at the evidentiary hearing held on July 10, 2019. Therefore, the Motion for Leave to File Sur-reply (ECF Nos. 65, 66) shall be DENIED.

the case shall be transferred to the United States District Court for the Eastern District of North Carolina.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction challenges a court's authority to exercise its jurisdiction over the defendant. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). The jurisdictional question is "one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Id.*; *Sigala v. ABR of VA, Inc.*, 145 F. Supp. 3d 486, 489 (D. Md. 2014). When a district court considers a motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction to defeat the motion. Fed. R. Civ. P. 12(b)(2); *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). "However, '[a] threshold *prima facie* finding that personal jurisdiction is proper does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing.'" *Id.* (quoting *Production Grp Int'l v. Goldman*, 337 F. Supp. 2d 788, 793 n. 2 (E.D. Va. 2004)).

If a court requires the plaintiff to establish facts supporting personal jurisdiction by a preponderance of the evidence prior to trial, it must conduct an "evidentiary hearing." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016) (citing *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n. 5 (4th Cir. 2005). "[O]nly when a material jurisdictional fact is disputed and that fact overlaps with a fact that needs to be resolved on the merits by a jury might a court defer its legal ruling on personal jurisdiction to let the jury find the overlapping

fact." *Id.* at 267-68 (4th Cir. 2016); *see also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (noting that, "where the jurisdictional facts are intertwined with the facts central to the merits of the dispute," deferring resolution of that factual dispute to a proceeding on the merits "is the better view").

## ANALYSIS

The Battle Fashions Inc. corporation was administratively dissolved in 2010. Therefore, the analysis is focused on whether this Court has personal jurisdiction over Mr. Battle, who is a resident of North Carolina.

Before a court can exercise personal jurisdiction over a non-resident defendant, a court must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute pursuant to Rule 4(k)(1)(a) of the Federal Rules of Civil Procedure; and (2) the exercise of jurisdiction conforms to the Fourteenth Amendment's due process requirements. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003); *Sigala*, 145 F. Supp. at 489. Although Maryland courts "have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set out by the Due Process Clause of the Constitution," *Carefirst*, 334 F.3d at 396, courts must address both prongs of the personal jurisdiction analysis. *Metro. Reg'l Info. Sys., Inc. v. American Home Realty Network, Inc.*, 888 F. Supp. 2d 691, 699 (D. Md. 2012); *CSR, Ltd. v. Taylor*, 983 A.2d 492, 502-03 (Md. 2009).

## I. Long-Arm Statute

To satisfy the first prong, a plaintiff must specifically identify a provision in the Maryland long-arm statute that authorizes jurisdiction. *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001). When interpreting the reach of Maryland's long-

arm statute, Md. Code Ann., Cts. & Jud. Proc., § 6-103(b), this Court must adhere to the interpretations of the Maryland Court of Appeals. *Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130 (D. Md. 1981), *aff'd*, 758 F.2d 649 (4th Cir. 1985); *Tulkoff Food Prod., Inc. v. Martin*, No. ELH-17-350, 2017 WL 2909250, at *4 (D. Md. July 7, 2017) (citation omitted).

Under Armour asserts that this Court has personal jurisdiction over Mr. Battle pursuant to Section 6–103(b)(1) of Maryland's long-arm statute by Mr. Battle's business transactions within Maryland, specifically by marketing and promoting his ICAN clothing to Maryland consumers, making sales to Maryland consumers, and shipping products to Maryland consumers. (Pl.'s Resp. 5 n. 6, 6, ECF No. 56.) Subsection 6–103(b)(1) authorizes personal jurisdiction over a person who, directly or by an agent: "[t]ransacts any business or performs any character of work or services in the State." A defendant need not be present in Maryland under this provision, but the defendant's actions must culminate in purposeful activity within Maryland. *Swarey v. Stephenson*, 112 A.3d 534, 557 (Md. Ct. Spec. App. 2015). "Maryland courts have construed the phrase 'transacting business' narrowly, requiring, for example, significant negotiations or intentional advertising and selling in the forum state." *Aphena Pharma Sols.- Maryland LLC v. BioZone Labs., Inc.*, 912 F. Supp. 2d 309, 315 (D. Md. 2012) (citations omitted). Further, the purposeful actions must be in relation to one or more of the elements of the cause of action. *Id.* Thus, "several contacts related to the cause of action only tangentially" do not establish personal jurisdiction. *Stisser v. SP Bancorp, Inc.*, 174 A.3d 405, 428 (Md. Ct. Spec. App. 2017).

Mr. Battle testified that he made sporadic sales from his internet website or his Facebook site. While specific numbers of sales may not be available, it is undisputed that it is

8

a small number, possibly only three sales to Maryland consumers. Mr. Battle also testified that he provided uniforms to his local AAU[6] basketball teams who may have played in competitive tournaments in Maryland, although he was only aware of one time. Mr. Battle also sent two cease-and-desist letters to Under Armour in Maryland.

This Court has previously held that "[a] defendant does not "transact business" within the meaning of section 6–103(b)(1) of Maryland's long-arm statute by sending written communications to a purported infringer of its rights." *Music Makers Holdings, LLC v. Sarro*, No. RWT 09cv1836, 2010 WL 2807805, at *6 (D. Md. 2010) (quoting Md. Code Ann., Cts. & Jud. Proc. § 6–103(b)). Further, Mr. Battle's minimal contacts with Maryland are simply insufficient to constitute "doing business" in the state under the transacting business provision, and those contacts only tangentially relate to the declaratory judgment cause of action. The three letters sent to third parties outside of Maryland in an unsuccessful attempt to put pressure on Under Armour are, likewise, insufficient to constitute "doing business" in Maryland. Therefore, Under Armour has not shown jurisdiction under § 6-103(b)(1). However, this Court will continue its analysis under the second prong, due process under the Fourteenth Amendment.

## II.     Due Process

Under the second prong, courts determine whether the exercise of personal jurisdiction comports with the Fourteenth Amendment's due process requirements. For a non-resident defendant, "due process requires only that . . . a defendant . . . have certain minimum contacts

---

[6]     Amateur Athletic Union. Mr. Battle testified that he coached basketball teams and trained players on his daughter's team. The teams are from grade six to twelve and travel for tournaments.

9

. . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A "minimum contacts" determination rests on the number and relationship of a defendant's contacts to the forum state, as well as whether the present cause of action stems from the defendant's alleged acts or omissions in the forum state. *Id.*

There are two different approaches to determine the extent to which a court may exercise personal jurisdiction: "'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) (citation omitted). General jurisdiction arises from a defendant's continuous and systematic contacts in the forum state. *Id.* "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* The parties agree that there is no basis for general jurisdiction over Mr. Battle. However, Under Armour asserts that this Court should find that it has specific jurisdiction over Mr. Battle.

Specific jurisdiction arises when there is an "affiliation between the forum and the underlying controversy." *Id.*; *Carefirst*, 334 F.3d at 397. To exercise specific jurisdiction, the lawsuit "must arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (citation and alterations omitted). When assessing specific jurisdiction, the United States Court of Appeals for the Fourth Circuit has formulated a three-part test for courts to use: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of

10

those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

Under Armour contends that Mr. Battle purposefully availed himself of the privilege of conducting activities in Maryland by sending two cease-and-desist letters to Under Armour in Maryland and by sending three letters on October 13, 2017 with the intent to interfere with Under Armour's business. Under Armour further asserts that its claims arise out of those activities. Mr. Battle argues that the October 13, 2017 letters were not directed at Maryland because they were sent to California and New York, the letters were not intended to interfere with Under Armour's business activities in Maryland but were simple requests to preserve documents, and the letters did not cause any harm to Under Armour's business activities or business relationships.

In the context of a declaratory judgment action, such as this, the nature of the claim is "to clear the air of infringement charges[,]'" so the claim does not arise from marketing or selling infringing products in the forum. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) (quoting *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. (1998)). Instead, in this context, the claim "arises out of or relates to the activities of the defendant [trademark owner] in enforcing the [trademark]." *See id.* Therefore, the relevant inquiry is to determine to what extent the defendant has "purposefully directed [such enforcement activities] at residents of the forum, and the extent to which the declaratory judgment claim 'arises out of or relates to those activities.'" *Id.* at 1332-33 (quoting *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed Cir. 2006)).

11

Certainly, the two cease-and-desist letters were directed at Under Armour in Maryland. However, this Court has previously held that cease-and-desist letters alone are insufficient to confer specific personal jurisdiction. *Mike's Train House, Inc. v. Metro. Transp. Authority*, No. JFM-16-2031, 2016 WL 6652712, at *4 (D. Md. Nov. 9, 2016) (citing *Music Makers*, 2010 WL 2807805, at * 6). In the patent context, "[p]rinciples of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." *Red Wing Shoe*, 148 F.3d at 1360-61. Common sense dictates a parallel in a trademark infringement context.

"The Court, however, may exercise specific jurisdiction over an out-of-state defendant if that defendant's actions go 'beyond simply informing the plaintiff that they regarded the plaintiff's products as infringing' and 'interfere with the plaintiff's business by enlisting a third party to take action against the plaintiff.'" *JHRG LLC v. StormWatch, Inc.*, No. 1:09-cv-919, 2011 WL 3111971, *11 (M.D.N.C. July 26, 2011) (quoting *Campbell Pet*, 542 F.3d at 887); *see also Silent Drive, Inc. v. Strong Industries, Inc.*, 326 F.3d 1194, 1202 (Fed. Cir. 2003) ("For the exercise of personal jurisdiction to comport with fair play and substantial justice, there must be 'other activities' directed at the forum and related to the cause of action besides the letters threatening an infringement suit.").

The Federal Circuit has explained, in the context of a patent case, that "[w]hile the plaintiff need not be the forum resident toward whom any, much less all, of the defendant's relevant activities were purposefully directed," the defendant's relevant "other activities" must "relate in some material way to the enforcement or the defense of the patent." *Avocent*, 552 F.3d at 1334, 1336. Importantly, the Federal Circuit emphasized that "enforcement activities

taking place outside the forum state do not give rise to personal jurisdiction in the forum." *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 792 (Fed Cir. 2011) (following *Avocent*, 552 F.3d at 1340).

"Examples of these 'other activities' include 'initiating judicial or extrajudicial patent enforcement with the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum.'" *Avocent*, 552 F.3d at 1334 (citations omitted). In *Avocent*, the plaintiff filed a non-infringement declaratory judgment action against a non-resident defendant. *Id.* at 1328. The defendant sold its products online through websites, such as Amazon.com, that could be accessed by forum residents as well as through big-box retailers that operated stores in the forum. *Id.* at 1327. The defendant also sent three letters seeking to enforce its patent rights: one to the plaintiff's CEO; a second to Amazon in Washington state encouraging Amazon to stop selling plaintiff's allegedly infringing products on-line; and a third to the plaintiff's patent lawyers in another state. *Id.* at 1327-28. The plaintiff argued that the letters sent provided personal jurisdiction under *Calder*[7] because the intended effect of the letters was to slow the plaintiff's sale of products. *Id.* at 1340. The Federal Circuit in the *Avocent* case held that the exercise of specific personal jurisdiction would not comport with due process, because the sending of letters under those circumstances was insufficient to subject the defendant to personal jurisdiction in the forum. *Id.* at 1340 (citing its earlier decision in *Breckenridge*, 444 F.3d at 1360, in which it would not have accepted jurisdiction based solely on

---

[7] *Calder v. Jones*, 465 U.S. 783 (1984).

the letters in that case, which included between ten and twenty letters to distributors and retailers informing them of the patents-at-issue).

Under Armour cites examples in which personal jurisdiction was found based on "extra-judicial enforcement activity": *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1067-68, 1080 (10th Cir. 2008); *Campbell Pet Co. v. Maile*, 542 F.3d 879, 886-87 (Fed. Cir. 2008); and *JHRG*, 2011 WL 3111971, at *11. In *Dudnikov*, the extra-judicial enforcement activity was to contact eBay resulting in the plaintiffs' auction being suspended. 514 F.3d at 1067-68, 1080. In *Campbell Pet*, the patentee arrived at a trade show held within the forum and attempted to have third parties at the trade show remove the allegedly infringing products from the show. 542 F.3d at 886. Although that activity was not successful, the *Campbell Pet* court stated: "The fact that [those] efforts did not succeed does not affect whether it is fair and just to treat [such] actions directed at [a plaintiff] as sufficient to trigger personal jurisdiction in the forum state." *Id.* at 887. However, in *Campbell Pet*, unlike here, the plaintiff went into the forum to attempt the interference. In *JHRG*, in addition to the cease-and-desist letter, the defendant contacted the manufacturer of a component used by the plaintiff in its allegedly infringing products and threatened to sue the manufacturer if it continued to supply the component. 2011 WL 3111971, at *4. The *JHRG* court held that it was reasonable to assert specific jurisdiction over the defendant because it had attempted to interfere with the supply of components of the plaintiff's product. *Id.* at *11.

Mr. Battle's letters to recipients in other states did not threaten litigation, had no effect on Under Armour's business, and did not result in any damage to Under Armour's business relationships. This Court finds that the letters sent by Mr. Battle's counsel to Stephen Curry,

his agent, and Under Armour's advertising agency were not merely to secure the preservation of documents but were a litigation strategy designed to put pressure on Under Armour to negotiate a settlement. However, this Court finds that the present case is more closely aligned with the facts in *Avocent* than with *JHRG*, *Campbell Pet*, or *Dudnikov*. Neither Mr. Battle nor a third-party appeared in Maryland to try to disrupt Under Armour's business such as in *Campbell Pet*. The letters were not targeted directly into Maryland, they did not threaten an Under Armour manufacturer with litigation such as in *JHRG*, and they did not ask the recipients to cease doing business with Under Armour such as in *Dudnikov*. Nor did they ask a vendor to stop selling Under Armour's products such as in *Avocent*, which the *Avocent* court held was insufficient to subject the defendant to personal jurisdiction. *See* 552 F.3d at 1340. Mr. Battle's litigation tactics are not enough to subject Mr. Battle to personal jurisdiction in Maryland.

Accordingly, Under Armour has failed to prove by a preponderance of the evidence that the exercise of jurisdiction is authorized under the state's long-arm statute pursuant to Rule 4(k)(1)(a) of the Federal Rules of Civil Procedure, or that the exercise of jurisdiction conforms to the Fourteenth Amendment's due process requirements.

### III. Transfer Venue

Mr. Battle has requested that this Court consider exercising its discretion to transfer this case to the United States District Court for the Eastern District of North Carolina, where Mr. Battle had previously filed an infringement suit against Under Armour, and where Under Armour neither objected to venue nor jurisdiction. (Reply 11-12, ECF No. 63.)

Under 28 U.S.C. § 1406 (a), if a plaintiff files suit in the wrong venue, then the district "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division

in which it could have been brought." "[T]he Fourth Circuit has adopted a reading of section 1406(a) authorizing transfer 'for any reason which constitutes an impediment to a decision on the merits in the transferor district but would not be an impediment in the transferee district.'" *Estate of Bank v. Swiss Valley Farms Co.*, 286 F. Supp. 2d 514, 522 (D. Md. 2003) (quoting *Porter v. Groat*, 840 F.2d 255, 258 (4th Cir. 1988)). This includes a transfer based on lack of personal jurisdiction over the defendant to another district where the defendant is subject to personal jurisdiction. *See id.*; *see also Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465-66 (1962).

This Court concludes that it is in the interest of justice to transfer this case to the Eastern District of North Carolina. It should not be a burden for the parties to continue most efficiently to a decision on the merits in that venue. All presently pending arguments for dismissal of this action[8] will remain pending for consideration of that Court.

---

[8] Presently pending is Under Armour, Inc.'s Motion for Summary Judgment (ECF No. 71), which is ripe for decision.

# CONCLUSION

For the foregoing reasons:

1. Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for Lack of Personal Jurisdiction or, Alternatively, Motion for Summary Judgment (ECF No. 51) is GRANTED IN PART.
2. This case will be transferred to the United States District Court for the Eastern District of North Carolina.
3. Plaintiff's Motion for Leave to File Sur-reply (ECF Nos. 65, 66) is DENIED.
4. A separate Order follows.

Dated: July 18, 2019.

_____/s/_____
Richard D. Bennett
United States District Judge